UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

CYNTHIA JANECZEK,  )
                   )
       Plaintiff,  )
                   )
v.                 )   Case No. 1:18-cv-629
                   )
COMMISSIONER OF    )   Honorable Phillip J. Green
SOCIAL SECURITY,   )
                   )
       Defendant.  )
_____)

## MEMORANDUM OPINION

This is a social security action brought under 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB). Plaintiff filed her application for DIB benefits on February 4, 2015. She alleged an October 4, 2013, onset of disability. (ECF No. 9-5, PageID.209). Plaintiff's claim was denied on initial review. (ECF No. 9-4, PageID.143-50). On July 25, 2017, she received a hearing before an ALJ. (ECF No. 9-2, PageID.60-98). On March 6, 2018, the ALJ issued his decision finding that plaintiff was not disabled. (Op., ECF No. 9-2, PageID.46-54). On May 14, 2018, the Appeals Council denied review (ECF No. 9-2, PageID.32-34), rendering the ALJ's decision the Commissioner's final decision.

Plaintiff timely filed a complaint seeking judicial review. Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

I. The ALJ erred in failing to find plaintiff disabled pursuant to Rule 201.14 because plaintiff lacked transferable skills.

    A. The ALJ erred in determining that plaintiff's alleged ability to deal with the public and take and schedule appointments constituted skills as that term is defined by Social Security regulations.

    B. The ALJ erred in determining that plaintiff's alleged skill involving taking and scheduling appointments was transferable given the vocational expert's testimony that the skills plaintiff allegedly acquired were peculiar to the hairdressing industry.

II. The ALJ's finding that plaintiff could sit for six hours out of an eight-hour day without the need for a sit-stand option was not supported by the evidence and was directly contrary to a medical opinion improperly rejected by the ALJ contrary to Social Security regulations.

(Plf. Brief at 1-2, ECF No. 14, PageID.646-47). For the reasons stated herein, the Commissioner's decision will be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this Court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d

525, 528 (6th Cir. 1997). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73; *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion.").

## **The ALJ's Decision**

The ALJ found that plaintiff last met the disability insured status requirements on December 31, 2015. (Op. at 3, ECF No. 9-2, PageID.48). Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset of disability of October 4, 2013,[1] through her date last disability insured. Plaintiff had the following severe impairments: "degenerative disc disease (lumbar spine), osteoarthritis (bilateral knees), and asthma." (*Id.*). Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listing impairment. (*Id.* at 4, PageID.49). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a range of sedentary work with the

---

[1] The denial of plaintiff's earlier claims for DIB and supplemental security income (SSI) benefits precluded an onset of disability date before October 4, 2013. (ECF No. 9-3, PageID.109-18).

following exceptions:

> The claimant frequently can balance and occasionally can kneel, crouch, stoop, crawl, and climb ramps and stairs. She cannot climb ladders, ropes, or scaffolds. The claimant occasionally can reach overhead with the upper extremities. The claimant never can be exposed to vibrations, unprotected heights, or moving mechanical parts. The claimant occasionally can be exposed to dust, noxious odors and gases, fumes, poor ventilation, extreme cold, humidity, and wetness. The claimant should avoid exposure to wet and slippery surfaces.

(*Id.* at 5-6, PageID.49-50).

The ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 5, PageID.50). Plaintiff could not perform any past relevant work. (*Id.* at 8, PageID.53).

In response to a hypothetical question regarding a person of plaintiff's age with her RFC, education, and work experience, the vocational expert (VE) testified that there were approximately 124,000 jobs that exist in the national economy that she would be capable of performing. (ECF No. 9-2, PageID.84-86; ECF No. 9-6, PageID.320-23). The ALJ found that this constituted a significant number of jobs, and that plaintiff was not disabled. (Op. at 8-9, ECF No. 9-2, PageID.53-54).

## Discussion

### 1.

Plaintiff argues that the ALJ committed error when he failed to find that she was disabled under Rule 201.14. Specifically, she argues that the ability to deal with the public and take and schedule appointments are not skills, and that they are not transferable skills. (Plf. Brief at 7-18, ECF No. 14, PageID.652-63; Reply Brief at 1-

5, ECF No. 16, PageID.687-91).

"Plaintiff's argument centers on the differences between Grid Rules 201.14 and 201.15. In the former, a claimant limited to sedentary work, closely approaching advanced age, possessing at least a high school education, who does not have transferable work skills is automatically determined to be disabled. In the latter, the same claimant, but who does have transferable skills is not automatically disabled." *Ferrell v. Commissioner*, No. 1:14-cv-1232, 2016 WL 316724, at *6 (W.D. Mich. Jan. 27, 2016) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2). The ALJ, relying on testimony of the VE, found that plaintiff had transferable work skills, and he used Rule 201.15 as a framework to determine that plaintiff was not disabled. (Op. at 8-9, ECF No. 9-2, PageID.53-54).

The VE testified that plaintiff acquired the following skills through her work as a cosmetologist: (1) dealing with the public (or customer service), and (2) taking and scheduling appointments. (ECF No. 9-2, PageID.85). Further, the VE testified that these skills were transferable to semi-skilled work as an appointment clerk. (*Id.*). The Dictionary of Occupational Titles (DOT) code for an appointment clerk is 237.367-010.[2] It is classified as "sedentary, semi-skilled work." (*Id.*). Work as an

---

[2] The ALJ asked the VE whether her testimony was consistent with the DOT and Selective Characteristics of Occupations (SCO). The VE responded that it was. (ECF No. 9-2, PageID.86). In the Sixth Circuit, "an ALJ satisfies h[is] duty to inquire if []he asks the VE whether the VE's testimony is consistent with the DOT and receives an affirmative response." *Joyce v. Commissioner*, 662 F. App'x 430, 435 (6th Cir. 2016) (citing *Martin v. Commissioner*, 170 F. App'x 369, 374 (6th Cir. 2006)). The ALJ satisfied his duty. An ALJ "is not required to affirmatively conduct an independent investigation into the testimony of witnesses to determine if they are

appointment clerk does not require additional skills or vocational adjustments in terms of tools, work settings, or work processes. (*Id.*).

The Sixth Circuit has considered the distinction between aptitudes and skills:

> An "aptitude" is an "inclination, a natural ability, talent, or capacity for learning." A "skill" is a "learned power for doing something competently." In short, an aptitude is an innate ability while a skill is a learned ability. While a person may have natural talents including dexterity, general coordination, space relations, etc., that same person may not have the particular learned ability to do a specific job.

*Weaver v. Secretary of Health & Human Servs.*, 722 F.2d 310, 311-12 (6th Cir. 1983) (citations omitted). "A policy statement of the Social Security Administration defines a skill as 'knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn).'" *Harris v. Commissioner*, 598 F. App'x 355, 363 (6th Cir. 2015) (quoting *Titles II and XVI: Work Skills and Their Transferability as Intended by the Expanded Vocational Factors Regulations Effective February 26, 1979*, SSR 82-41 (reprinted at 1982 WL 31389, at *2 (SSA Jan. 1, 1982)).

In *Harris*, the Sixth Circuit rejected the plaintiff's argument that greeting people, giving information, and answering phones were aptitudes rather than skills. The claimant unsuccessfully argued that the aforementioned abilities were not sufficiently complicated to constitute skills. The Sixth Circuit found that the argument "fail[ed] on its own terms." 598 F. App'x at 363. "While a person may be

---

correct." *Johnson v. Commissioner*, 535 F. App'x 498, 508 (6th Cir. 2013) (citation and quotation omitted).

innately gregarious, this does not necessarily mean that she will be effective at dealing with the public, delivering information, or operating the telephone. It is not difficult to imagine a sociable person performing these duties in a lackluster fashion." *Id*. In addition, the Court of Appeals cited the "substantial amount of authority" undermining the plaintiff's argument.[3] *Id*. Here, as in *Harris*, the ALJ's findings regarding plaintiff's skills are well within the "zone of choice" and there is "no reason in the record to upend the decision of the Commissioner." *Id.* at 364.

Plaintiff's argument that the VE testified that her skills were "peculiar to the hairdressing industry" and "inextricably linked" to her job as a hairdresser cannot withstand scrutiny. The VE gave no such testimony.

---

[3] The Sixth Circuit decision invoked by plaintiff, *Richardson v. Secretary of Health & Human Servs.*, 735 F.2d 962 (6th Cir. 1984), did not address the skills at issue in this case. In *Richardson*, the Court of Appeals held that "the ability to maintain a production standard and the ability to use hand tools" were aptitudes rather than skills. *Id.* at 964. Further, the VE's testimony in this case that work as an appointment clerk would not require vocational adjustments distinguishes it from *Richardson* where the VE provided no testimony regarding vocational adjustments. *Id.*

Plaintiff submitted post-hearing interrogatories to the VE. (ECF No. 9-6, PageID.330-33). Four interrogatories are related to plaintiff's argument, and therefore warrant further discussion. Plaintiff asked two interrogatories regarding the O*NET.[4] In interrogatory seven, plaintiff's attorney asked whether it was true that the O*NET link to appointment clerk occupation involved other tasks such as using a computer. (*Id.* at PageID.330). The VE responded that the O*NET was not a source that she used for hearings because it "does not differentiate between skill levels." (*Id.* at PageID.332). Further, the VE noted that the statement referenced by plaintiff's attorney was "for all the skill levels within the crosswalks grouping for that O*NET associated group for that DOT code." (*Id.*).

In interrogatory eight, plaintiff's attorney asked whether it was true that the most significant element of the appointment clerk occupation according to the O*NET link was knowledge of administrative and clerical procedures and systems such as word processing systems. (*Id.* at PageID.330). The VE gave the following answer: "The statement you are referring to may be a significant element in the O*NET however, based on the DOT and my experience some, but not all of the things listed

---

[4] "The Occupational Information Network or O*NET. O*NET is an online database that was developed by the North Carolina Department of Commerce through a grant by the United States Department of Labor." *Adams v. Commissioner*, No. 1:15-cv-602, 2016 WL 2892669, at *4 (W.D. Mich. May 18, 2016). "The ALJ was not required to accept the occupational information contained in the O*NET or any particular source." *Id.* "Under the regulations, an ALJ is authorized 'to use a vocational expert or other specialist' and to 'take administrative notice of reliable job information available from governmental and other publications.'" *Morrris v. Commissioner*, No. 1:16-cv-433, 2017 WL 1159809, at *10 (W.D. Mich. Mar. 29, 2017) (quoting 20 C.F.R. § 404.1566(d), (e)).

apply to the 'Appointment Clerk' referenced by DOT 237.367-010. The DOT and my experience would be the guiding factors." (*Id.* at PageID.332). The VE's answers to interrogatories seven and eight did not indicate that plaintiff's skills were peculiar to the hairdressing industry.

Nothing in the VE's responses to plaintiff's interrogatories ten and eleven, set forth below, restricted plaintiff's skills to the hairdressing industry:

> 10. Assume that SSR 82-41 provides that skilled employment requires knowledge of work activity which requires exercising significant judgment that goes beyond carrying out simple job duties and requires more than thirty days to learn[.] Is it your testimony that the Claimant's prior work in scheduling hair appointments in a book falls within that definition?
>
> Response: Yes. The Appointment Clerk is Sedentary Semi-Skilled work and as it is per the DOT takes 30 days up to and including 3 months to learn. I do believe that it is a skill to schedule these appointments.
>
> 11. If your answer to the previous question is "Yes", please describe the basis of your opinion that the work Claimant performed in scheduling hair appointments in a book took more than thirty days to learn and/or required the exercise of significant judgment.
>
> Response: Scheduling appointments in a salon requires knowing each stylist's schedule, how long each service takes, how many appointments can be scheduled and if a service can be scheduled while another is being performed. Working with schedules to make sure that each stylist is maximizing their time so working the schedule to make the appointments fit. It may even require calling clients to reschedule appointments or move appointments to make sure that services can be completed without overlap.

(ECF No. 9-6, PageID.331-32).

The ALJ found that the skills identified by the VE, dealing with the public and taking and scheduling appointments, were transferable to the semi-skilled work of an appointment clerk. (Op. at 8-9, ECF No. 9-2, PageID.53-54). The VE's testimony

-9-

that the skills were transferable provides substantial evidence supporting the ALJ's finding. *See Kyle v. Commissioner*, 609 F.3d 847, 857 (6th Cir. 2010). The Court finds no basis for disturbing the Commissioner's decision.

**2.**

Plaintiff argues that the ALJ's RFC finding that she could sit for six hours out of an eight-hour day without the need for a sit-stand option is not supported by the evidence. Further, she argues that the ALJ's finding is contrary to the opinion offered by Carol Richwine, F.N.P., and that the nurse practitioner's opinion should have been considered as the opinion of an acceptable medical source. (Plf. Brief at 18-20, ECF No. 14, PageID.663-65).

Plaintiff filed her application for DIB benefits on February 4, 2015. The new regulations forming the foundation of plaintiff's argument do not apply to her claim. They only apply to claims filed on or after March 27, 2017. *See Maher v. Berryhill*, No. 3:16-cv-904, 2018 WL 652869, at *6 n.9 (M.D. Tenn. Jan. 11, 2018); *see also Uncapher v. Commissioner*, No. 5:17-cv-767, 2018 WL 4305739, at *11 n.5 (N.D. Ohio Sept. 10, 2018) ("[A] nurse practitioner . . . is not an acceptable medical source for claims filed prior to March 27, 2017.").

Under the applicable regulations, a nurse practitioner is not an "acceptable medical source." *See* 20 C.F.R. § 404.1513(a). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Titles II and XVI: Considering Opinions and Other Evidence from*

-10-

*Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at *2 (SSA Aug. 9, 2006)). The opinions of a nurse practitioner fall within the category of information provided by "other sources." *Id.* at *2; *see* 20 C.F.R. § 404.1513(d). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at *1, 4; *see Forrest v. Commissioner*, No. 1:16-cv-633, 2017 WL 1905867, at *4 (W.D. Mich. May 10, 2017) ("At bottom, SSR 06-03p[5] requires only that information from other sources be 'considered.' "). This is not a demanding standard, and it was easily met here.

On November 23, 2015, Nurse Practitioner Richwine completed an RFC questionnaire. (ECF No. 9-7, PageID.472-76). Among other things, she offered an opinion that plaintiff required a sit/stand option. (*Id.* at PageID.473). This opinion was not entitled to any particular weight because RFC is an administrative finding of fact reserved to the Commissioner. S*ee* 20 C.F.R. § 404.1527(d)(2), (3); *see also Shepard v. Commissioner*, 705 F. App'x 435, 442 (6th Cir. 2017) ("RFC is an 'administrative finding,' and the final responsibility for determining an individual's

---

[5] On March 27, 2017, the Administration rescinded SSR 06-03p "for claims filed on or after" that date. Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed Reg.15263-01 (Mar. 27, 2017) (reprinted at 2017 WL 1105348). The Administration noted the ruling was inconsistent with new rules that "state that all medical sources, not just acceptable medical sources, can make evidence that we categorize and consider as medical opinions." *Id.*; *see Hancock v. Commissioner*, No. 1:16-cv-1105, 2017 WL 2838237, at *7 n.2 (W.D. Mich. July 3, 2017) ("Those new rules, however, apply only to claims filed on or after March 27, 2017.").

RFC is reserved to the Commissioner."); *Cutler v. Commissioner*, 561 F. App'x 464, 471 (6th Cir. 2014) (An opinion offered on an issue reserved to the Commissioner "is not entitled to any particular weight.") (citation and quotation omitted).

The ALJ considered Nurse Practitioner Richwine's opinions and found that they were entitled to little weight. The ALJ's RFC finding did include restrictions limiting plaintiff to sedentary work with postural restrictions and occasional overhead reaching with her upper extremities. (Op. at 4-5, 7, ECF No. 9-2, PageID.49-50, 52). The ALJ's RFC finding also gave some weight to the opinions of Edward Brophy, D.O. (*Id.*). "Dr. Brophy's assessment [was] consistent with the overall medical evidence and evidence received at the hearing level [did] not support progressive worsening of the [plaintiff's] impairments such that additional limitations would be warranted." (*Id.* at 7, PageID.52). The Court finds no error.

## Conclusion

For the reasons set forth herein, the Commissioner's decision is affirmed. A separate judgment shall issue.

Dated: December 6, 2018    /s/ Phillip J. Green
　　　　　　　　　　　　　　PHILLIP J. GREEN
　　　　　　　　　　　　　　United States Magistrate Judge